Case 13-5764, Ice House America LLC v. Charles Cardin. Oral argument, 15 minutes per side. Mr. Kelly for the appellate. You may proceed. Members of the Court, Michael Kelly of the Tennessee Bar. It's an honor and a privilege to be back before the Court. I do want to reserve five minutes for rebuttal. Members of the Court, the question for resolution today is a pure question of law that has arisen as a result of amendments in 2005 to the Bankruptcy Code. In the Bankruptcy Abuse Prevention and Consumer Protection Act, which I'll refer to as BAP-CEPA. Or the 2005 Act, whatever you want. What's relevant for purposes of my argument is whether that act affected the complete abrogation of the absolute priority rule. And as the Court, I'm sure, is familiar, the absolute priority rule is a rule that has been significant in bankruptcy. It's Chapter 11 bankruptcy practice for over 100 years. It's now been codified in 1129B2B2. And in essence, it provides that a debtor in a Chapter 11 reorganization cannot retain property of the estate that existed at the time of the commencement of the case after conclusion of the plan. The law was well settled to that effect up until BAP-CEPA. There was no question that in the case of a corporate debtor or in the case of an individual debtor, the absolute priority rule applied. Then came, and in this case, what the bankruptcy judge determined was that BAP-CEPA affected the complete abrogation of that rule as to an individual Chapter 11 debtor. Here, Mr. Cardin. And the practical consequence of that decision, she then went on, over abjection, held a confirmation hearing and confirmed the plan. Mr. Cardin is operating under that plan at the present time. What was the property that's subject to this? He had and still has a home and farm that he valued in his schedules at, I think, $430,000. And he had eight ice-making machines, which are the essence of his business. These are self-contained, large machines that a consumer comes up, puts $2 in, and gets a bag of ice. So they generate income. He estimated in his schedules that those were worth, well, the total assets, those two things were approximately $730,000. Two things being the machines and his home? Guilty. Yes, Your Honor. It wasn't secured, the home? Both were secured. Both were secured with one loan from one bank. Which you claim there's a lot of equity in. Yes, Your Honor. Roughly something like approximately $200,000 in equity. Plus, those ice machines generate income. So what the bankruptcy court found was that he, and the income, for example, in 2012 was $264,000 in gross income. So what the bankruptcy court found was that he was able, under the BAP-CEPA, who, of course, retained his exempt property as any bankruptcy debtor can, he was able to get under the clear amendment, what we would agree that BAP-CEPA means, he would get to use both property and income during the period of the Chapter 11. And then after the Chapter 11 was concluded, he would get to keep all that property while our client would get paid a minimal portion of its, well, I shouldn't say minimal portion, $125,000 of its $1.5 million unsecured claim. A claim, by the way, that arose based upon a jury verdict in the state of Florida. $1.5 million jury verdict, which we then, the bankruptcy was filed when we attempted to domesticate the judgment in Tennessee. So the bankruptcy court found that that's what BAP-CEPA meant. He could keep all that exempt property. But if he doesn't keep that exempt property, can he still make income from it and pay you off? He would be allowed to make, under, he would be allowed, it does not appear that he would be able to meet that requirement unless he's able to generate much, much, much more income during the planned period. But you might be hurt worse if he doesn't have anything to generate income from these ice machines. Well, what we would have asked, Your Honor, is that because this does violate the absolute priority rule, which remains viable after BAP-CEPA, that the case should either be dismissed or converted to a Chapter 7 and should be liquidated. And you get the machines at that point? We would get the machines or get the value of the machines in a foreclosure. Yes, Your Honor. We believe, Your Honor, in making the decision that she did, the bankruptcy judge took a position that has been adopted by the Ninth Circuit BAP and several bankruptcy courts, but it flies in the face of the decision of the three circuit courts that now have evaluated the issue, the Fourth, the Fifth, and the Tenth, as well as two bankruptcy judges, Judge Cook and Judge Steyer in the Eastern District of Tennessee. And those courts have reached the conclusion, we believe the correct conclusion, that BAP-CEPA by its terms only, it did exclude from the estate the income and property that the debtor would generate during the plan, but that it did not completely abrogate the absolute priority rule. Otherwise, it didn't do anything to it, in your view. Exactly. It brings post-petition earnings into the estate, right, or excludes them from the estate. It excludes from the estate the property and the income that's generated during the plan period. Okay. So, it excludes from the estate the property, the post-petition earnings, but otherwise, in your reading, doesn't affect the absolute priority rule. Exactly. And the courts have reached that conclusion, most of them have reached the conclusion by saying, and I'll be very brief, by saying that... It's still green. By saying that it's ambiguous. Is that your position, is that ambiguous? No, Your Honor. To be candid, I think the lively court, which is the most, is the Fifth Circuit decision, and is a very short, brief, clear decision, and most importantly relies upon, or references, the Seifert decision of this court approximately a year ago. That court says, if you take the amendments in BAP-CEPA and look at them in the context of similar changes to Chapter 13, that it is very clear. The, in lively, and crucial point, the court said, the case, case law finding ambiguity rests on terms included in and under two words not normally subject, the subject of such parsing. Reading the phrase 1129B2B2 to events ambiguity seems a grammatical stretch because 11115 expressly states that property is being added to the estate, added to that comprised by 541. The section does not supersede 541 property any more than the number 2 supersedes 3. And the court cites the Seifert decision, in which this court, dealing with Chapter 13, interpreted the virtually identical section in Chapter 13 to mean added. What was the Chapter 13 section again in that case? The Chapter 13 section is 1306, and it is virtually identical to... Do you have it right there? Yes, Your Honor. Does it have the includes language again? Or you could do it on rebuttal. 1306 is a stand-alone section. Property of the estate includes, in addition to the property in Section 541, and then the two sections, property of the kind specified that the debtor acquires after commencement of the case, and earnings. So post-petition, property, and earnings. And to conclude, what this court said in Seifert, and I think the same analysis applies, is that read together, Section 541 fixes property of the estate as of the filing, while Section 306 adds to the property of the estate, property interest, which arrives post-petition. And using that same analysis, we reach the conclusion that the absolute priority rule continues to apply to individual Chapter 11 debtors, and it's only limited as to that post-petition property and income. All right. Very well. You have your rebuttal here from Mr. Maddox. Good morning, Your Honors. My name is Bill Maddox. I'm an attorney in Knoxville, Tennessee. I represent Charles Dwayne Cardin, and I've been his only bankruptcy counsel since we filed the Chapter 11 back in 2011. I've got a hard burden here today. I've got three circuits lined up against me, and I've got on my side the Ninth Circuit Bankruptcy Appellate Panel. My job here is to convince you guys in 15 minutes that these other three circuits are wrong, and the Ninth Circuit Appellate Panel was right. Yeah, and you might want to start with the Seifert case from our circuit because it would be awfully strange, it seems, to read what I think is literally the same language differently in this section than we did in the Chapter 13 section. Well, I think it goes along with the overall tenor of the 2005 Act. Well, that's before we sort of fly off into overall tenor. I mean, you all are purporting to make a textualist case in interpreting this and are focusing on what it includes, as I understand it. Is there any textual difference between the section at issue here and the section at issue there? Because as Mr. Kelly just read it, it sounded identical. Well, I think the textual difference is that it's referenced in 1129. You bring in all 1115 property, which includes a 541 property, and that's what the debtor is allowed to keep. Didn't we have the same kind of reference there? I mean, I could be mistaken on that. In the 13 case. Yes, and I think that's why it conforms with Chapter 13. The absolute priority rule does not apply in Chapter 13. Okay. I'm not sure if that, anyway. Okay, go ahead. I wanted to clarify a few things from what Mr. Kelly said. Yes, there is equity in the ice machines and in his house, above and beyond the lien holder. There are two parts to the confirmation battle, and we had the judge bifurcated the issues. She let us decide this absolute priority rule solely on briefs, and then we had a separate factual issue. And after a factual determination that we met every other criteria, our plan was confirmed, including the best interest of the creditor's test. Judge Parsons established, after a two-day trial, what the value of the debtor's estate was, what the liquidation value would be, and at the end of the day determined that our amended plan met that liquidation value. So there's no determination that Mr. Kelly's client or any other creditor is going to be worse off. Well, they're worse off than they would be if they – I mean, I think Mr. Kelly outlined the consequences of his interpretation here, which is your plan doesn't get approved, right? Correct. This probably goes to a seven. They probably get the ice machine. So that makes them – I mean, they'd be better off in that scenario. No, they're getting paid more in our scenario. They don't seem to think so. Exactly. But that doesn't seem to have much to do with the interpretive issue either, right? Right. Well, it does. I mean, and one of the primary arguments I want to address is what the Fourth Circuit said in Maharaj. I want to quote directly. This quote to me is rather incredible. This was frequently expressed overall purpose of BAPSIPA, i.e., to ensure that debtors who can pay back a portion of their debts do so. That's what the judge in Fourth Circuit said that BAPSIPA is trying to do. That's exactly what they're trying not to do here. They want my client in seven, or they want the case dismissed. They don't want him to pay back a portion of the debts. And I find that part of Maharaj is the most telling, is that they – I think all these courts went about it with the absolute priority rules, this untouchable dogma. They couldn't understand the language. They said, well, the language is unclear. So clearly they weren't trying to change the absolute priority rule. And then they said, you know, all these greater impositions on Chapter 11, debtors ensuring that they pay more and they pay more and they pay more. What the absolute priority rule is doing is going to put individual debtors in seven or out of bankruptcy altogether. It's not going to ensure that they're paying back a portion of their debts. Well, I mean, we're not – as I understand it, our job is to sort of figure out what these words mean here, you know, and not to sort of second guess maybe some policy choice that Congress made. And as I understand your argument, you're looking at 1129 – what is it, A2, B2 or something like that? It ends with B2, which says that the debtor may retain property included in the estate under Section 1115. And so then – so the question is, well, does property included in the estate by Section 115 include everything that's in the estate, i.e., property that would already have been in the estate under Section 541 for eons, plus this new post-petition layer of property that's put in the estate under this Act, or does this reference to property included in the estate under Section 1115 refer only to this new post-petition layer that is included – I think included in the – I keep getting that mixed up – included in the estate under this Act. So then we go to 1115, and it says property of the estate includes in addition to the property specified in Section 541. And then it talks about this post-petition layer. And I guess my question for you is, I mean, the word includes or included, I think, is oftentimes what's called a transitive verb. It's a verb that is acting upon an object, unlike an intransitive verb is the children played outside. They're not acting on an object. But if you – a transitive verb is you do something to an object. And here it's saying property included in the estate under Section 115. So 115 is doing the including, bringing it in. And the problem I have with your argument is the property was already there under Section 541. So I don't see how Section 1115 is doing any including. It was already included. I would point you to the two words in addition. I mean, if you look at the very first sentence of 1115, property of the estate includes in addition to the property specified in Section 541, then this new property. Right, but that's almost acknowledging that it was already there under 541, isn't it? As opposed to being brought into the bankruptcy estate by Section 1115. 1115 is defining what property of the estate for a Chapter 11 individual debtor is. 1129 says this is the property. What does 541 do in a Chapter 11 case? I think 1115 supersedes it or incorporates it. 1115 refers to it, but I mean, Section 541 is a foundational provision of the code. And it's brought into 1115. OK, but it was already there. I mean, it already brought the property into the estate, right? Right. So why would we act like 1115 is the provision that brings classically property of the estate into the estate? Because 1129 tells us that it does. I mean, 1129 has no purpose otherwise. I mean, 1129 is the absolute priority rule, and they changed it. I mean, there's no argument. They changed it by starting a phrase, except for. That was not there. The easiest way to work this out is to say there's no repeal by implication. That's the way the courts have gone off. If Congress had wanted to do it pretty specifically, they could have done it easily, and it's not there. And that's what the other courts have said, right? Right. I mean, that is what they've said. What about the other two bankruptcy judges in the Eastern District of Tennessee that Mr. Kelly says have ruled the other way? Is that correct? No. I mean, I'm practicing in front of Judge Steyer on a daily basis, and I respect him greatly, but I have to side with Judge Parsons on this one. Just because the language, they determined the language is ambiguous, it's almost like they reached the end conclusion first. We can't change it because the language is ambiguous. I would refer back to the Freedman Court, who very specifically said this language is not ambiguous. There's only one way to read it, and if you read it, it doesn't do violence to anything else that's done in the act. In fact, it goes along with all the other provisions that try and bring 11 back in line with 13. The only decision that didn't sort of step back and say it's ambiguous, you can't do anything, is Freedman. They went into the language and said this language is clear. I mean, I think if you drop an alien down here that knows nothing about bankruptcy codes, said read this, tell me what it means, they're going to go with the Freedman Court. I mean, the words in addition, includes, added, are not complicated or nuanced words. The plain meaning is very clear. I think Mr. Kelly agrees, but, you know, you gentlemen just disagree on where it comes out. Right. I mean, I agree, and that's where I'd like to spend some more time on just overall fairness of this. I mean, fair and equitable is part of Chapter 11. I mean, going back to the Maharaj court, the court talked again about this world where, to the contrary, I'm quoting at page 573, such a plan may be confirmed if the holders of such claim vote in favor of the plan. They are likely to do so if a reasonable dividend is proposed. That's just not the way the world is right now. Secondly, the U.S. trustee objected to my plan based on the absolute priority rule, which had nothing to do with the dividends she was going to get paid. The absolute priority rule is being used as a tool to drive individual debtors into Chapter 7 or have their case dismissed. It is not being used to ensure that debtors pay more, which has been the stated goal of the 2005 Act all along. Before the 2005 Act, as Mr. Kelly points out in his brief, a debtor was treated better in Chapter 11 than in Chapter 13 because in Chapter 11 the debtors' post-petition earnings were not included in the property of the estate. Isn't that all that Congress was trying to fix here? Bring those into alignment so that post-petition earnings are included in a Chapter 11 estate, just like they are in Chapter 13, so we don't have that disparity? If we're going to go off to what's the purpose here, isn't that historically a pretty compelling story as to what Congress was doing? I think they were trying to align it with Chapter 13. Not only post-petition earnings. You've got to commit your reasonable disposable income for 60 months, just like Chapter 13. If the absolute priority rule exists, where are these debtors going to go? You've got the property. You can't keep that. You've still got to pay your body in full. That was a rule that was in place since 1952, before 2005. It's not exactly a radical regime. And we can all agree that the bankruptcy code was pretty radically changed in 2005. There were a lot of changes, and a lot of them aren't clear. The practitioners of 13 know about the hanging paragraph. Where does the 70-day rule come from on the look-back? Where do they get 910 days? There's a lot of stuff that's not clear, which is why I keep going back to Freedman, the one court that actually delved into the language and said, how does this work, and here's how it works, versus the other courts that just said it's too ambiguous to figure out. Clearly, Congress didn't intend to abolish the absolute priority rule. Was Freedman the Ninth Circuit BAP case? Yes, sir. But again, just going back real quick to the fair and equitable. Basically, with the absolute priority rule and with the other changes, there's no chapter of bankruptcy for certain debtors. I mean, if you have property like my client, but you have an enormous debt that, I mean, yes, he has income, and he can fund a plan. He can't pay the $1.5 million in five years. Mr. Kelly actually argued that our plan wasn't feasible because he couldn't even maintain what we had. There is no chapter for him. Other than Chapter 7, if this were a debtor where it was not a business debt, let's say this was a car wreck or enormous $500,000 in medical bills, my client would not pass the means test. I feel confident in telling you that. The means test wouldn't apply. It's a business case. He would not pass the means test. There is no bankruptcy chapter for him. Well, I mean, before 2005, the chapter would be SEF, right? Right. So, I mean, why isn't that just unfortunately where it is now as well? The goal of 2005 Act, as the court on the opposite side of me says, was to make sure people pay a portion of their debts. 2005 didn't eliminate Chapter 7. Chapter 7 has always been there, still is, liquidation. But it's not there for certain people. I don't get that. If my client had... It's there for your client. It is for my client. But I'm telling you that if it were consumer debts, and there are clients that have more than 400,000 in consumer debts, a car wreck, an accident at your house, long extended medical bills, but they can't pass the means test, there is no bankruptcy chapter for them. And the stated goal of the 2005 Act all throughout is we want less people in Chapter 7. We want to try and make sure that, as the court said, pay a portion of their debts. That's what my client is trying to do. Don't we have to leave it up to Congress to set up the mechanism for it because the courts can't just do it out of the clear blue, you know. I agree. And I would submit humbly to the court that they did not, that they set up the mechanism for this. They altered the absolute priority rule by changing the language of 1129B2. It's up to us to figure out how they did it. And I would submit to you that the Friedman decision goes through the language, goes through the history of the absolute priority rule, notes that it's not absolutely been absolute, and, you know, their origin is the absolute priority rule. And it simply just does not apply now. There's no other way to interpret that. All right. Well, thank you for your argument, Mr. Maddox. Mr. Gellin, rebuttal. Very briefly, and I don't think it will take me the full time. First, Mr. Maddox talked about the policies of BAPSEPA. As if the only purpose was to try to save Chapter individuals who have gotten themselves into financial fixes and want to or somehow want to avoid Chapter 7. But BAPSEPA, this is what the factors, this is from the House representative report, the factors which led to the need for bankruptcy reform included, quote, a growing perception that bankruptcy leave may be too readily available, a concern about financial consequences for the nation's economy when creditors are not able to collect debts, a perception that bankruptcy system, quote, has loopholes and incentives that allow and sometimes even encourage opportunistic personal filings and abuse, and here's a really important one, and studies indicating that some bankruptcy debtors are able to pay a significant portion of their debts. It's just amazing to me to hear counsel talk about fair and equitable in this situation as if that benefits him. This is an individual who was found liable by a Florida jury for a $1.5 million judgment. The moment that that company tried to domesticate the judgment in Tennessee, he filed bankruptcy over two years ago, and for two years he has been operating that business, benefiting from it, and under the present plan is making teeny payments of interest to us while this case is pending. What was that judgment for? Was it just a debt? No, Your Honor. It was tortuous. It had several components, tortuous interference with contract, a breach of contract. He was a dealer for Ice House America,  and then the judge actually entered some findings of fact indicating that he had gone out while he was a distributor, started helping a new company sell their product, competing company, and tried to bring customers to that new company. He rose out of this relationship. He rose out of this relationship. But having done that, he's now saying that with the BAP-CEPA amendments, he should be allowed. He has generated some secure debt, but he should be allowed to keep the exempt property, anything he generates during the plan period, and all that property left. And Ice House America, that had a $1.5 million judgment, should get $125,000. So if ever there was a case, it's similar, frankly, to the facts in, I believe it's the Lively case, where an individual had a very successful business that was generating income. I think they were railroad cars or something like that. And wanted to keep that business. Made the same argument that he should be allowed to keep it because the overwhelming purpose of BAP-CEPA was to save Chapter 11 debtors. There's nothing in the legislative history suggests that Congress is trying to, at all costs, allow individuals to reorganize. Sometimes they have gotten themselves into circumstances, but for Chapter 7, I mean, Chapter 7 is a savior for them because at least they get a fresh start. The only other points I would make, Your Honor, are, one, I would encourage the court. He relied a lot upon the Friedman decision. Read Judge Jury's vigorous dissent. Thoughtful, scholarly dissent. It's the most valuable part of Friedman. It explains why the Friedman majority was in error. And finally, I just want to conclude by reading what Judge Stare said in the Lindsey case when he got it right. Now, I think he found ambiguity where there probably wasn't, but this is just great writing. Judge Stare wrote, returning to Section 1129B2B2, because Section 1115 is a supplement to Section 541 with respect to individual Chapter 11 debtors, the more logical reading of the phrase, quote, included in the estate under Section 1115 is the narrow one that Congress intended for only post-petition wages and debtors after acquired property to be accepted from the absolute priority rule. As aptly discussed in prior decisions, had the intent been to completely remove application of 1129B2B2 as to individual debtors, Congress could have done so in a more explicit manner. For example, it could simply have added the phrase, except in the case in which the debtor is individual to the beginning of subsection 2 without any reference to Section 1115 at all. However, by referencing 1115, the purpose of which is to add post-petition wages and property acquired by the debtors post-petition into the estate, it can be easily deduced that Congress intended to exclude only post-petition wages and property acquired by the debtors post-petition from the application of 1129B2B2. All right. Very well. Thank you both for your arguments. Very interesting case. Case to be submitted. Clerk may call the next case.